**In re David Harry MILLERBURG, Jr.,
SS#: 567–58–5862, Debtor.**

**Bankruptcy No. 86–70648–ATS.**

United States Bankruptcy Court,
E.D. North Carolina.

May 2, 1986.

David G. Sneeden, Wilmington, N.C., for debtor.

Ralph S. Pennington, Wilmington, N.C., for GMAC.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matters before the court are the Debtor's Application for Turnover Order and the motion of General Motors Acceptance Corporation for relief from the automatic stay. A hearing was held in Raleigh, North Carolina on April 28, 1986.

### FACTS

The basic facts are not disputed.

David Harry Millerburg, Jr. is a debtor in possession under chapter 11 of the Bankruptcy Code, having filed a voluntary petition under chapter 11 on March 17, 1986.

In August, 1985, the debtor arranged with a friend at Don Kimball Chevrolet, Honda, BMW, Inc. ("Don Kimball"), to purchase a 1985 Chevrolet Blazer. The debtor took possession of the automobile on August 19, 1985, but the sale contract was not signed until September 5, 1985.

The sales agreement is a standard form agreement supplied by General Motors Acceptance Corporation ("GMAC"), and is titled Retail Installment Sale Contract. The agreement reflects that the purchaser is "EPS Moldings, Inc., David Harry Millerberg [sic], Jr., 3935 Appleton Way, Wilmington, N.C. 28403." The seller (creditor) is listed as "Don Kimball Chevrolet, Honda, BMW, Inc., P.O. Box 299, Wilmington, N.C. 28403." Although the purchaser includes "EPS Moldings, Inc.," the contract was signed by the debtor individually.

The contract called for a purchase price of $15,823.86, a life insurance premium of $810.47, and a license fee of $26.00. The debtor made a down payment of $2,500, and agreed to pay the balance plus interest at the rate of 14.50% per annum over a period of 5 years in 60 monthly installments of $335.18 beginning on October 20, 1985. The contract is also a security agreement which provides that the unpaid balance is secured by a lien on the 1985 Chevrolet Blazer. Don Kimball transferred the contract to GMAC.

For some unexplained reason, neither Don Kimball nor GMAC immediately recorded its lien on the vehicle's certificate of title. The title was issued by the North Carolina Department of Transportation, Division of Motor Vehicles, on October 8, 1985, in the name of EPS Moldings, Inc., David Harry Millerberg, [sic], Jr.," but no liens were reflected.

The debtor made none of the monthly payments, and GMAC brought suit against Mr. Millerburg to collect the balance of the contract. GMAC also mailed an application to the Division of Motor Vehicles on January 21, 1986, to have its lien recorded on the certificate of title. A second title was issued by the Division of Motor Vehicles on February 12, 1986, which listed GMAC as first lienholder.

GMAC obtained a default judgment against the debtor on March 5, 1986, in the sum of $20,110.80 with interest from the 8th day of January, 1986, plus attorney's fees of $3,016.62. The judgment also provided that the 1985 Chevrolet Blazer be released to GMAC for sale. Previously, in January, 1986, GMAC obtained a prejudgment attachment of the Blazer pursuant to its suit against the debtor on the grounds

that the vehicle was being operated with California license plates.

The parties agree that the value of the vehicle is less than the amount of GMAC's security interest, and that the debtor is not able to provide adequate protection in the form of monthly payments.

## DISCUSSION AND CONCLUSIONS

It is undisputed that GMAC now has a perfected lien encumbering the 1985 Chevrolet Blazer in an amount exceeding the value of the vehicle. GMAC's lien is perfected, both by the prejudgment attachment pursuant to N.C.GEN.STAT. § 1–440.1, and by the notation on the certificate of title pursuant to N.C.GEN.STAT. § 20–58 (see N.C.GEN.STAT. § 25–9–302(1)(d) and (3)(b)).

■ Ordinarily, a creditor with an under-collateralized lien is entitled to relief from the automatic stay where the debtor in possession cannot provide adequate protection. Relief from the stay, however, is not appropriate in this chapter 11 case.

This proceeding is not a proceeding to avoid GMAC's lien. Nevertheless, the undisputed facts suggest a high probability that an adversary proceeding to avoid GMAC's lien as a preferential transfer under 11 U.S.C. § 547(b) would be successful.

■ For purposes of 11 U.S.C. § 547(b), a transfer is not made until it is perfected. Section 547(e)(2)(B).[1] Perfection by attachment occurs as to personal property upon levy. N.C. GEN. STAT. § 1–440.33(c). Perfection by notation on an automobile's certificate of title occurs when the application and proper fee are delivered to the Division of Motor Vehicles. N.C. GEN. STAT. § 20–58.2. In this case, perfection by both means occurred in January, 1986,

within 90 days of the debtor's bankruptcy petition and more than 4 months after September 5, 1985, the date GMAC's lien attached.

The other elements of § 547(b) also appear to be present, and it is likely that an adversary proceeding brought pursuant to 11 U.S.C. § 547 would be successful.[2] Such an action may be brought by a debtor in possession with the powers of a trustee. 11 U.S.C. § 1107(a).

A recent opinion from the Fourth Circuit Court of Appeals, *In re Hartman Paving, Inc.*, 745 F.2d 307 (4th Cir.1984), limited the ability of a debtor in possession to use § 544(a) to avoid a defectively notarized deed of trust. The circumstances in the present case, however, are quite different.

GMAC's problem is not a defective perfection of its lien, but the fact that it failed to perfect its lien for more than 4 months after the lien attached. GMAC may argue that even if the lien is unperfected, the debtor in possession under *Hartman Paving* should not be able to avoid the lien because the lien is good as between the debtor and GMAC.

The court in *Hartman Paving* focused on the rights of a debtor in possession as a *bona fide* purchaser under § 544(a)(3). The court held that under West Virginia law, a *bona fide* purchaser with knowledge of a defectively notarized deed of trust took the property subject to the deed of trust. Because the debtor in possession had actual knowledge of the defective acknowledgement, the court in *Hartman Paving* held that the deed of trust, as against the debtor in possession, had priority.

One of the positions occupied by the trustee (and the debtor in possession under § 1107(a)) is that of judicial lien credi-

---

1. 11 U.S.C. § 547(e)(2)(A) provides that a transfer occurs when it takes effect between the parties if the transfer is perfected at, or within 10 days of such time. In this case the lien was perfected more than 10 days from the time the transfer took effect.

2. It also appears that the transfer would not be excepted under 11 U.S.C. § 547(c). The transfer

may have been intended by the parties to be for new value, but it was not in fact a "substantially contemporaneous" exchange (§ 547(c)(1)(B)). The security interest was a purchase money security interest, but it was not perfected within 10 days from the date the debtor received possession and therefore § 547(c)(3) would not be available.

tor. 11 U.S.C. § 544(a)(1). Clearly, under North Carolina law a judicial lien creditor has priority over an unperfected lien on personal property. N.C.GEN.STAT. § 25–9–301(1)(b); § 25–9–301(3); 11 U.S.C. § 101(30). "... (F)ailure to note the interest on the certificate (of title) will result in losing to a levying creditor or other judgment lienor." R. Lord & C. Lewis, *North Carolina Security Interests*, § 5–1(H), at 108 (1985). Notice or knowledge are not factors to be considered. Consequently, as between a chapter 11 debtor in possession and a creditor with an unperfected lien on personal property, the debtor in possession will prevail. That being so, GMAC should not be granted relief from the automatic stay to pursue its lien rights.

This, however, does not mean that the debtor will be able to use the automobile for his purposes. The debtor contends that he, as a salesman, needs the automobile to obtain employment, and that the court should direct GMAC to immediately return the vehicle to him.

■ The applicable section of the Bankruptcy Code is 11 U.S.C. § 542(a) which says:

[e]xcept as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property *that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title*, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate (emphasis added).

In this case, the debtor may not exempt the 1985 Chevrolet Blazer because it was the subject of a voluntary transfer, i.e., the giving of a security interest to GMAC on September 5, 1985. 11 U.S.C. § 522(g). *In re Dipalma*, 24 B.R. 385 (Bankr.D.Ma. 1982).

■ The debtor would be able to use the Blazer, but the debtor's intended use for the vehicle to earn wages does not benefit the bankruptcy estate. The vehicle is clearly property of the estate under 11 U.S.C. § 541, but Mr. Millerburg's postpetition wages are not. In a chapter 13 case, a debtor's postpetition wages are part of the estate. 11 U.S.C. § 1306(a)(2). That, however, is not also true under chapter 11. 11 U.S.C. § 541(a)(6) says:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

. . . .

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, *except such as are earnings from services performed by an individual debtor after the commencement of the case* (emphasis added).

If the debtor's postpetition wages are not part of the estate, the estate does not benefit from Mr. Millerburg's use of the vehicle. On the contrary, the debtor's use of the vehicle will cause the 1985 Chevrolet Blazer to depreciate, and thus reduce the value of the estate.

■ The debtor clearly has the authority to sell the Blazer even prior to having GMAC's lien set aside. 11 U.S.C. § 363(f)(4) permits a sale by the trustee (or debtor in possession under 11 U.S.C. § 1107(a)) where there is a *bona fide* dispute as to the validity of the lien. The potential preference action against GMAC would certainly qualify as a *bona fide* dispute for purposes of § 363(f)(4). Since the debtor in possession may sell the property, turnover is appropriate under 11 U.S.C. § 542(a).

If the debtor sells the Blazer and holds the proceeds pending the outcome of the adversary proceeding to avoid GMAC's lien under 11 U.S.C. § 547, both the interests of the estate and those of GMAC will be protected. Accordingly, GMAC is directed to immediately turnover the 1985 Chevrolet Blazer to the debtor, the debtor is directed to sell the 1985 Chevrolet Blazer pursuant to 11 U.S.C. § 363(f) and Bankruptcy Rule 6007, and the debtor is directed to pay the

proceeds of sale to David G. Sneeden, counsel for the debtor, to be held at interest pending resolution of an adversary proceeding to be brought by the debtor to avoid the lien of GMAC as a preferential transfer under 11 U.S.C. § 547(b).

SO ORDERED.