**In re BEKER INDUSTRIES CORP.,
and Beker Phosphate Corporation,
Debtors.**

Bankruptcy No. 85 B 11709–10.

United States Bankruptcy Court,
S.D. New York.

July 25, 1986.

Kronish, Lieb, Weiner & Hellman by William J. Rochelle, III, New York City, for the debtors-in-possession.

Rosenman Colin Freund Lewis & Cohen by Paul L. Bindler, Joel W. Sternman, New York City, for Official Committee of Debenture Holders.

Weil, Gotshal & Manges, by Robbie Narcisse, New York City, for Commercial Credit Business Loans, and National Bank of Canada.

Bishop, Liberman & Cook by David A. Strumwasser, New York City, for Official Committee of Equity Holders.

Dewey, Ballantine, Bushby, Palmer & Wood by Martin Domb, New York City, for Western Co-op. Fertilizers (U.S.) Inc.

Stroock & Stroock & Lavan by Lawrence Handelsman, Bonnie Schindel, New York City, for Official Committee of Unsecured Creditors.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

This matter presents the issue of whether property that is subject to junior and senior liens not disputed on this motion may be sold pursuant to 11 U.S.C. § 363(f) (1984) by a debtor-in-possession free and clear of such liens for less than the aggregate amount of the liens over the objection of the junior lienholders.

### I.

Among the creditors of Beker Industries Corp. ("Beker" or the "Debtor") who found themselves before the bankruptcy court for

this district when Beker filed its petition for reorganization under Chapter 11 of the Bankruptcy Code 11 U.S.C. § 101 *et. seq.* (1984) (the "Code"), are the holders of Beker's 15 ⅞% Secured Subordinated Debentures issued in 1983 and due July 1, 2003 (the "debentures"). A committee has been appointed to represent their interests (the "Committee"), *see In re Beker Industries Corp. and Beker Phosphate Corporation,* 55 B.R. 945, 13 B.C.D. 1230 (Bankr.S.D.N.Y.1985). Payment of the debentures is secured by liens on Beker's fertilizer plant at Conda, Idaho and Beker's interest in a partnership which owns, *inter alia,* an adjacent phosphate mine, a rock beneficiation plant and mineral interest (the "Conda Assets"). These liens are subject to a $10 million senior lien in favor of certain banks. That lien was imposed by this Court pursuant to 11 U.S.C. § 364(d) upon granting Beker's motion for an order permitting it to enter into a loan agreement. *See* 58 B.R. 725, 13 B.C.D. 136 (Bankr.S.D.N.Y.1986). The debenture holders claim to be owed in excess of $72 million.

By order to show cause dated July 14, 1986, the Debtor seeks permission pursuant to 11 U.S.C. § 363 to sell the Conda Assets free and clear of the senior and junior liens by public auction to be held on August 1, 1986. The liens are to attach to the proceeds. A hearing to consider whether the auction sale should proceed under *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corporation),* 722 F.2d 1063 (2d Cir.1983), and whether reasonable contacts had been made within the industry to identify and interest purchasers who might be interested in acquiring the Conda Assets was scheduled for July 23, 1986. All parties assume that the sale price will be less than the aggregate amount of the various liens. Upon the complaint of the Committee that it had been frustrated in obtaining discovery, its assertion that it needed time to develop expert testimony and its claim that the sale was barred by 11 U.S.C. § 363(f)(3), the Court adjourned the July 23, 1986 hearing and sale *sine die* pending resolution of the instant issue.

## II.

The "starting point" in the exercise of statutory construction is the language of the statute itself. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976). Section 363(f) provides for sale over the objection of secured creditor only under certain conditions, two of which are in issue here:

(3) ... the price at which such property is to be sold is greater than the aggregate *value* of all liens on such property;

\* \* \* \* \* \*

(5) such entity could be compelled in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §§ 363(f)(3) and (5) (emphasis added).

It is well settled that in construing statutory language, terms of particular meaning to the subject matter of the statute are to be interpreted in line with that meaning, *Ernst & Ernst v. Hochfelder,* 425 U.S. at 199, 96 S.Ct. at 1383, and in light of other provisions of the statute. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 571, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82 (1978); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 734, 95 S.Ct. 1917, 1924, 44 L.Ed.2d 539 (1975).

Here, the term "value" has such meaning. That term is employed in the same context in § 506(a). There it is provided that

An allowed claim of a creditor secured by a lien on property [of the estate] ... is a secured claim to the extent of the *value* of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the *value* of such creditor's interest ... is less than the amount of such allowed claim. Such *value* shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(emphasis added). It is thus plainly indicated that the term "value", as used in § 506(a) with respect to the interest of a secured creditor, means its actual value as determined by the Court, as distinguished from the amount of the lien. That indication and the last sentence of § 506(a) requiring determination of value upon disposition of an asset standing as collateral strongly support the conclusion that the term "value", as employed in § 363(f)(3) is to be similarly interpreted.

We reach this conclusion notwithstanding the statement in the House and Senate reports that "[t]he trustee may sell free and clear if ... the sale price of the property is greater than the *amount* secured by the lien..." H.Rep.No. 95–595, 95th Cong. 1st Sess. 345 (1977); S.Rep.No. 95–989, 95th Cong. 2d Sess. 56, U.S.Code Cong. & Admin.News 1978, p. 5787, 5842, 6301–02 (1978) (emphasis added). But it is not at all clear that this language is anything more than colloquial or that the authors of these reports focused on the distinction between value and amount. Moreover, Congress, in enacting the Code, maintained that it is the value of the collateral that is protected by the Code. In discussing the adequate protection afforded a secured creditor under § 361 and linking that concept to value, the Senate Report emphasized: "This is consistent with the view expressed in *Wright v. Union Central Life Insurance Co.*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940), where the Court suggested that it was the value of the secured creditor's collateral, and not necessarily his rights in the specific collateral, that was entitled to protection." S.Rep.No. 95–989 at 54, U.S.Code & Admin.News at 5840.

Our function is not to determine merely what the legislative history says. Rather, the inquiry concerns what the statute means. Here, the statutory language and scheme are patently clear enough; they control. *Ernst & Ernst v. Hochfelder*, 425 U.S. at 201, 96 S.Ct. at 1384; *United States v. Campos–Serrano*, 404 U.S. 293, 298–99,

92 S.Ct. 471, 474–75, 30 L.Ed.2d 457 (1971); *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 396–7, 71 S.Ct. 745, 751, 95 L.Ed. 1035 (1951). We thus conclude that § 363(f)(3) is to be interpreted to mean what it says: the price must be equal to or greater than the aggregate value of the liens asserted against it, not their amount. *Accord Matter of Rouse*, 54 B.R. 31, 33 n.1 (Bankr.W.D.Mo.1985) (the provisions of § 506(a) indicate that a valuation hearing would have to be held to authorize a sale under § 363(f)(3); *In re Hatfield Homes, Inc.*, 30 B.R. 353, 355 (Bankr.E.D. Pa.1983) ("... if the proposed sales price is the best price obtainable under the circumstances of a particular case, then the fact that junior lienholders may receive little or nothing from the proceeds of the sale would not, standing alone, constitute reason for disapproving the proposed sale.")

Broad statements to the contrary, made without any analysis and without consideration of the interplay of § 506(a) and § 363(f)(3), *e.g.*, *In re Red Oak Farms, Inc.*, 36 B.R. 856, 858, 11 B.C.D. 762 (Bankr.W.D.Mo.1984), are no reason for not following the language of the statute. Cases such as *In re Murphy*, 34 B.R. 78 (Bankr.D.Md.1983), and *In re Bobroff*, 40 B.R. 526, 11 C.B.C.2d 40 (Bankr.E.D.Pa. 1984), which merely proceed on the assumption that value equals amount are hardly compelling. Nor is *Matter of Stroud Wholesale Inc.*, 47 B.R. 999 (E.D.N.C. 1985), persuasive on this point. There it is stated that the 1984 amendment of § 363(f)(3) to substitute "all liens on such property" for "such interest," made "clear Congress' intention that sales free and clear of liens and interests may be justified by (f)(3) only if the sale price will exceed the aggregate value of all liens on the property." It is also asserted that this interpretation is consistent with the "well-established rule" that property cannot be sold in bankruptcy unless the debtor has equity. 47 B.R. at 1001–02. In terms of our inquiry here, this equating of value and amount is a non-sequitur.[1] To us, the last

---

1. A further weakness in *Stroud* is its citation of *Matter of Riverside Investment Partnership*, 674 F.2d 634, 640 (7th Cir.1982) for a "well established" hard rule. As noted *infra*, that case speaks of only a "general rule." *Ibid.*

sentence of § 506(a) is simply too compelling to afford another construction. In calling for the Court to value collateral in conjunction with its proposed disposition, it obviously contemplates the performance of that exercise on sale.

Furthermore, it is undisputed that collateralized property can be sold for less than the amount of the lien at confirmation by cramming down a secured creditor. Section 1129(b)(2)(A)(ii) so provides without any references to the protections of § 363(f), so long as the lien attaches to the proceeds or the secured creditor can bid in its lien pursuant to § 363(k). Moreover, if a debtor desires to retain the property subject to the lien, it need pay only the allowed amount of the secured claim. 11 U.S.C. § 1129(b)(2)(A)(i). As noted, § 506(a) limits such a claim to the value of the collateral as determined by the bankruptcy court. § 1129(b)(2)(A)(i). No constitutional provision bars such an exercise. *E.g., Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940), *reh. denied*, 312 U.S. 711, 61 S.Ct. 445, 85 L.Ed. 1142 (1941). As Judge Friendly observed, "there appears to be no doubt that a bankruptcy court can constitutionally be vested with power to resort to its judgment in determining what constitutes satisfaction of the claims of creditors." *In re Penn Central Corp.*, 384 F.Supp. 895, 950 (Regional Rail Reorg. Ct.1974).

But the power to sell speaks only little as to its exercise, particularly in the case of a major asset. *Lionel*, 722 F.2d at 1071. Under the former Bankruptcy Act, it was repeatedly said that "as a general rule" a bankruptcy court should not order property subject to one or more liens sold free and clear unless the sale proceeds will produce full compensation for secured creditors and produce equity for the estate. *E.g., Matter of Riverside Investment Partnership*, 674 F.2d 634, 640 (7th Cir.1982) (citing cases). A "general rule" implies that there are exceptions. Thus, the court in *In re Bernhard Altmann International Corp.*, 226 F.Supp. 201, 205–07 (S.D.N.Y. 1963), although also stating the general practice, observed that collateralized property might be sold for less than the amount of a lien over the objection of a secured creditor where justified by special circumstances to be developed at an evidentiary hearing and upon the court valuing the property. It held:

> The Bankruptcy Court was required to ascertain the facts as to the value of the property to be sold and the value of all the security held by the lienor so as to determine the respective interests of the lienor and the general creditors in the security, whether the estate had any equity in it and whether there might be provable claims for a deficiency which might affect the rights of the general creditors. Any other circumstances bearing on the question of the relative interests of the lienor and the general creditors, or the advantages or disadvantages to either or both of the proposed methods of disposition, should have been considered also.
>
> It was only then that the referee could exercise his sound discretion to determine whether the proposed sale by [the mortgagee] to [a third party] coupled with the waiver of deficiency conditioned upon [such] sale.... or a public sale, furnished adequate protection to the rights of the mortgagee and was in the best interests of the bankrupt estate. He was not bound to approve either of such sales unless he found that these conditions had been satisfied.

226 F.Supp. at 206–07. Thus, some flexibility in the reorganization process will be retained and the creditor given a high measure of protection. 226 F.Supp. at 206–07.

Because of the vagaries of the valuation process, particularly for assets like those at issue here, *see In re Beker Industries Corp. et al.*, 58 B.R. 725, the proper exercise of discretion would require that those circumstances be compelling and that it be found, as in *Hatfield Homes*, that "the proposed sales price is the best price obtainable under the circumstances of a particular case...." 30 B.R. at 355. Since property in which there is no equity for the

general estate "in practical essence ... belong[s] to the secured creditors," *Bernhard Altmann*, 226 F.Supp. at 207, they, absent compelling circumstances, should sell it themselves if they object to the sale.

Of course, the Debtor might assert that, were the property to deteriorate in value in the hands of the secured creditors, their deficiency claims might increase to the detriment of the estate. But the Court can consider this factor along with others. *Bernhard Altmann*, 226 F.Supp. at 207. One might suspect, moreover, that such a creditor could be estopped from claiming a deficiency greater than that proposed by the Debtor.

In determining whether there are special circumstances, it is to be remembered that the purpose of the general rule is to protect the secured creditor from a debtor cashing out its collateral and leaving it with an unsecured deficiency claim in the absence of special circumstances, and the determinations noted above. The cases that invoke the general rule usually concern secured creditors who desire foreclosure. *E.g., In re Unikraft Homes of Virginia, Inc.*, 370 F.Supp. 667 (W.D.Va.1974). But if a secured creditor does not desire to take the property for itself and yet refuses to consent to a sale at less than the amount of its lien, it is effectively insisting that others, including the debtor at the expense of its own cash flow and of its general creditors, continue to fund the property without a firm prospect for return. Such might be a special circumstance in the context of a particular case and in light of other evidence.

### III.

None of these considerations are altered by § 363(f)(5) which the Debtor claims enables it to sell the property without constraint. As noted, that section enables a debtor-in-possession to sell property free and clear of the interest of another entity if that entity could be compelled to take a money satisfaction in a legal and equitable proceeding. Relying on *In re Hunt Energy Co. Inc.*, 48 B.R. 472, 485 (Bankr.N.D.

Ohio 1985), and *In re Red Oak Farms, Inc.*, 36 B.R. at 858, the Debtor claims that since a secured creditor could be crammed down pursuant to § 1129(b)(2), that section is satisfied.

We disagree if by this assertion the Debtor is claiming that such property can be sold for less than the aggregate amount of all liens without the protections noted above. First, one would think that Congress, in authoring the Bankruptcy Code, could have easily found the words necessary to refer to § 1129(b)(2) of the Code had that been its intent. Rather, § 363(f)(5) is to be interpreted, in our judgment, as referring to those few interests in property that can, by operation of law, be reduced to dollars. Liens are addressed directly in § 363(f)(3) and it is that section which is to be applied. To interpret § 363(f)(5) in the fashion suggested by the Debtor would "swallow-up (f)(1)–(f)(4) ..." *Matter of Stroud Wholesale, Inc.*, 47 B.R. at 1003.

Second, in *Hunt*, the court seemingly applied the cram-down theory in selling a major asset on the basis of its finding that the Debtor had valid business reasons as required by *Lionel*. But it ignored the policies of the general rule noted above and also that *Lionel* did not concern the sale of collateral over the objection of a secured creditor. Furthermore, at confirmation, the overall interest of all creditors and the Debtor becomes so strong that statutory cram-down on a dissenting secured creditor is justified by the need to confirm. Absent the existence of special circumstances prior to confirmation, the secured creditor should be protected as noted above.

Consequently, it appears that an evidentiary hearing is to be held to determine whether the Debtor has equity in the property and, if not, whether circumstances exist warranting sale of the property. That hearing is to be held on August 11, 1986, in conjunction with the related abandonment hearing previously scheduled by this Court. Since those circumstances are also related to the test set by the *Lionel* court for selling a major asset outside of a plan of reorganization, the hearing originally

scheduled for July 23, 1986 is to be held the same time. It is

SO ORDERED.