In re ONEIDA LAKE
DEVELOPMENT,
INC., Debtor.

Bankruptcy No. 89–01639.

United States Bankruptcy Court,
N.D. New York.

Jan. 24, 1990.

Goldberg, Harding & Talev, P.C. (Harold P. Goldberg, of counsel), Syracuse, N.Y., for debtor.

Melvin & Melvin (Louis Levine, of counsel), Syracuse, N.Y., for Merchants Bank.

Hage & Hobaica (J.K. Hage, III, of counsel), Utica, N.Y., for Utica Boat Service, Inc. and Robert J. Pernisi, Jr.

Bond, Schoeneck & King (Edward A. Mervine, James D. Dati, of counsel), Syracuse, N.Y., for Thomas K. Crowley.

Scolaro, Shulman, Cohen, Lawler & Burstein, P.C. (William J. Leberman, of counsel), Syracuse, N.Y., for Wood Pointe Venturers.

Grass, Balanoff, Costa & Whitelaw, P.C. (Michael J. Balanoff, of counsel), Syracuse, N.Y., for Jack Yoffa.

Steven A. Paquette, Syracuse, N.Y., for New York State Dept. of Taxation & Finance.

Baum & Woodard (Lee Woodard, of counsel), Syracuse, N.Y., for Eagan Real Estate.

William Yeomans, Syracuse, N.Y., for Raymond Bloss.

Russell L. Egleston, Mattydale, N.Y., for Michael J. Sacco, Jr.

Richard Croak, Staff Atty., Office of U.S. Trustee, Utica, N.Y.

Lombardi, Devorsetz, Stinziano & Smith (Kevin Bernstein, of counsel), Syracuse, N.Y., for Don Cohn.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter comes before the Court on the motion of Oneida Lake Development, Inc., d/b/a Wood Pointe Marine ("Debtor") for an order pursuant to § 363 of the Bankruptcy Code (11 U.S.C.A. §§ 101–1330) (West 1989) ("Code"), permitting it to sell all of its real estate, together with all physical assets to Raymond H. Bloss ("Bloss") for the sum of $750,000.00 in accordance with the terms of a written purchase offer which is subject to the approval of this Court.

At a hearing held on the motion at Syracuse, New York on December 19, 1989, a higher offer of $776,000.00 was submitted by Utica Boat Service, Inc. and Robert J. Pernisi, Jr. ("Utica").

At the same hearing objections to the sale were interposed by Thomas K. Crowley ("Crowley") and Wood Pointe Venturers ("WPV"), both judgment creditors, while Merchants Bank & Trust Company of Syracuse ("Merchants"), conditionally objected to the sale seeking only to have its junior mortgage paid in full upon closing.

The Court approved the offer of Utica subject to a determination of the objections to the Debtor's application to sell its property free and clear of liens. The Court further indicated that it would permit Utica to withdraw its offer at any time prior to the Court's determination of the Debtor's ability to sell free and clear of liens.

The parties were given until December 27, 1989 to submit memoranda in support of their respective positions, and that period was thereafter extended upon request of the parties until January 2, 1990.

On January 4, 1990, the Court received written notice from Utica's attorney that it was revoking and rescinding its offer of December 19, 1989.

On January 8, 1990, Debtor's counsel advised the Court by letter that the original offer of Bloss in the sum of $750,000.00 had been renewed and requested that the Court decide the issues raised by way of the objections. On January 16, 1990, the Court was notified by letter from Russell L. Egleston, Esq. that his client, Michael J. Sacco, Jr., who appeared at the December 19, 1989 hearing, wished to submit an offer of $775,000.00.

## FACTS

Debtor filed a voluntary petition pursuant to Chapter 11 of the Code on September 11, 1989. On November 11, 1989 Debtor entered into a contract for the sale of its real property designated as the Wood Pointe Marina at Oneida Lake, New York for the sum of $750,000.00. The contract also included all inventory and equipment, excepting boats subject to any floor plan agreement.

It does not appear that the contract was expressly contingent upon the approval of this Court, although it does contain a reference to "Bankruptcy Proceedings". (*See* Offer to Purchase attached to Debtor's Motion Papers).

As of the date of filing, it appears that the Debtor's real property was encumbered by three mortgages, three judgments and delinquent real estate taxes totalling in excess of 1.3 million dollars.

While there apparently is no dispute with regard to the validity of the three mortgages and the delinquent real property taxes, the Debtor has commenced an adversary proceeding to set aside two of the three judgments as preferences, and those proceedings are presently pending. (*Oneida Lake Development, Inc. v. Yoffa and Crowley*, Adv.Pro. No. 89–00106, filed October 4, 1989).

The third judgment in the sum of $600,000 is held by WPV and while the Debtor's moving papers suggest that it too will be either compromised or become the subject of a similar adversary proceeding, no such proceeding has as yet been commenced.

It is apparent that if all three judgments are set aside, a sale price of not less than $750,000.00 will be substantially in excess of the remaining liens. The Bloss offer, however, provides for the purchaser to assume the first and second mortgages and for the Debtor to take back a third mortgage securing $140,000.00, so that the Debtor will only receive $250,000.00 in cash at the time of closing.

Debtor has provided the Court with an appraisal of the real property prepared in 1987 reflecting the fair market value at 1.25 million dollars, however, a revision of that appraisal as of November 30, 1989 reflects a significant decrease in that value.

It appears that the proposed sale will result in the transfer of substantially all of the Debtor's assets and that it will thereafter file a liquidating plan. (Application of Harold P. Goldberg dated November 27, 1989, para. 12).

## ARGUMENTS

At the hearing held before the Court on December 19, 1989, both Crowley and WPV objected to the sale, however, in his Memorandum of Law filed January 2, 1990, Crowley purports to withdraw its objection based upon (1) improper notice, and (2) Code § 363(f) and now urges the Court to approve the sale "upon the terms set forth both in the Debtor's motion and at the hearing". (Memorandum of Law on behalf of Thomas K. Crowley filed January 2, 1990 at pgs. 2 and 14).

WPV also faxed a Memorandum of Law to the Court on January 2, 1990 in support of their objection to the sale. WPV contends that a sale pursuant to Code § 363(b) requires notice and a hearing, and that the hearing must be an evidentiary hearing at which a debtor must satisfy creditors that

the requirements outlined by the United States Second Circuit Court of Appeals in *In re Lionel Corporation,* 722 F.2d 1063 (2d Cir.1983) have been satisfied. WPV contends further that such a hearing is also necessary to determine the issues raised by Code § 363(f).

With regard to the so-called "Lionel test", WPV argues that the Debtor has failed to show what impact the proposed sale will have on the Debtor's ability to reorganize, why the purchase price is significantly less than the 1987 appraisal and other recent purchase offers, what factors, if any, have caused a decrease in value and why an "immediate" sale is necessary.

WPV also postures that Debtor cannot comply with Code § 363(f) since there is no bona fide dispute as to its judgment (§ 363(f)(4)), that the sale will not produce a full money satisfaction of its judgment (§ 363(f)(5)), and that the remaining subsections of Code § 363(f) are concededly inapplicable.

Crowley's Memorandum of Law argues that WPV's judgment is in bona fide dispute and that in fact, Debtor's counsel has indicated its intent to commence an adversary proceeding challenging WPV's judgment as a preference, thus, complying with the requirements of Code § 363(f)(4). Crowley also contends that Debtor's sale may be approved pursuant to Code § 363(f)(3) since a proper interpretation of that subjection requires the Court to value the secured creditor's lien at the actual value of the collateral subject to the lien, and not at the face amount of the lien, thus, adequately protecting the lien which is all that a secured creditor is entitled to under the applicable provisions of the Code dealing with secured claims.

The Debtor argues in its Memorandum filed December 22, 1989 that the "Lionel test" has been met by a showing that Debtor's real property is rapidly depreciating as borne out by the appraisal of 1987 and its subsequent revision as of November 30, 1989, showing significant depreciation and by a showing that the Debtor does not have the ability to reorganize and must liquidate all of its assets.

Debtor points out that Code § 363(f) requires only that one of its five subsections be complied with and that clearly subsection (f)(4) has been complied with since WPV's judgment is in bona fide dispute and Debtor will be forced to commence an action to set aside the judgment.

Finally, Debtor argues similarly to Crowley that Code § 363(f)(3) is also complied with since Code § 506(a) gives a creditor a secured claim only to the extent of "the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set-off is less than the amount of such allowed claim". (Debtor's Memorandum filed December 22, 1989 at pgs. 5–6). Thus, if the fair market value of debtor's property is $750,000.00, the liens of secured creditors cannot exceed that amount.

## DISCUSSION

The Court considers first whether or not Debtor has satisfied the so-called "Lionel" test by virtue of the hearing held before this Court on December 19, 1989.

In *In re Lionel Corp., supra,* 722 F.2d 1063, the Second Circuit set out several factors that a bankruptcy court must consider in approving a sale of a Chapter 11 debtor's property pursuant to Code § 363(b). It is clear, however, that some of those factors have no relevance where the debtor proposes to sell all or substantially all of its assets pursuant to Code § 363(b), a factual scenario that the Second Circuit was not dealing with in *Lionel.*

▮ Factors such as: 1) the proportionate value of the asset to the estate as a whole; 2) the effect of the proposed disposition on future plans of reorganization; 3) which of the alternatives of use, sale or lease, the proposal envisions; and 4) the likelihood that a plan of reorganization will be proposed and confirmed in the near future are not significant where it is apparent that the proposed sale will have the effect of a total liquidation of the debtor's assets.

■ Conversely, the remaining *Lionel* factors, a) the amount of time elapsed since filing, b) the proceeds to be obtained from the disposition vis-a-vis any appraisals of property, and c) whether the asset is increasing or decreasing in value are relevant whether or not the Code § 363 sale includes substantially all of the debtor's property.

Certainly there is no need to hold any evidentiary hearing regarding factor a), while factors b) and c) may very well be the subject of an evidentiary hearing where those factors are actually put in issue by an objecting creditor.

■ In the instant contested matter, the Debtor has submitted an appraisal of the property reflecting a value of 1.25 million dollars as of August 26, 1987 and an addendum to that appraisal as of November 30, 1989, reflecting significant decrease in value. Further at the hearing of December 19, 1989, at least three prospective bidders appeared and the best offer submitted was $776,000.00, which was subsequently withdrawn. In addition, representatives of Eagan Real Estate, appointed by the Court to market the property, indicated that their efforts to produce a buyer had resulted only in the offer of Bloss at $750,000.00.

While it is true that the information provided by the Debtor at the December 19, 1989 hearing was not in the form of sworn testimony and evidentiary exhibits, WPV has presented nothing to the Court that suggests that any of the data submitted at the hearing is unworthy of belief and it is apparent that their opposition is limited to their unsupported allegation that the "proposed sale price is grossly inadequate, as evidenced by prior purchase offers and a 1987 appraisal of the property." (Affidavit In Opposition To Application of Debtor of William J. Leberman, sworn to December 19, 1989, para. 4).

■ While the Court certainly cannot ignore the initial opposition of Crowley simply because he apparently has chosen to withdraw his opposition, it is clear that he too offered "opinions" as opposed to fact in seeking to delay the sale of the marina.

The Court concludes that given the addendum to the appraisal dated November 30, 1989, the statements of the representatives of Eagan Real Estate, Inc., the statements of Debtor's counsel, and the bidding which occurred at the December 19, 1989 motion, and the subsequent post-hearing offers, the Debtor has met the requirements of the *Lionel* test and to further delay the sale of this property by scheduling an evidentiary hearing to determine the fair market value of the property by further appraisal would serve no beneficial purpose.

Turning to a consideration of Code § 363(f), there appears to be no dispute that that section authorizes a debtor to sell its property free and clear of liens and encumbrances, so long as it can satisfy any one of the five subsections. It is equally clear that subsections (f)(1), (2) and (5) cannot be complied with by the Debtor. At issue then is whether the Debtor has established compliance with either subsection (3) or (4).

Subsection (f)(3) authorizes a sale by debtor free and clear of liens and encumbrances only where the sale price "is greater than the aggregate value of all liens on such property."

■ Both the Debtor and Crowley argue in their respective Memoranda of Law that the term "value" as utilized in Code § 363(f)(3) must be defined by reference to Code § 506(a) which defines secured status as extending only to "the value of such creditor's interest in the estate's interest in such property", thus negating the contention that value is determined by looking solely to the face amount of the lien in analyzing Code § 363(f)(3).

Crowley cites the well-reasoned opinion of Bankruptcy Judge Howard Buschman, III, in *In re Beker Industries Corp.*, 63 B.R. 474 (Bankr.S.D.N.Y.1986), which supports the concept that the *value* and not the *amount* of the liens is what the Court must look to in applying Code § 363(f)(3).

Bankruptcy Judge Buschman suggests that the Code's statutory scheme authorizes a debtor to deal with its secured as-

sets by insuring simply that the secured creditor receives only the value of its secured claim in debtor's property, even though that may be significantly less than the face amount of the claim by referencing Code § 1129(b)(2)(A)(i) and § 1129(b)(2)(A)(ii). *See In re Beker Industries Corp., supra* 63 B.R. at 477.

While Judge Buschman acknowledges that there is significant authority to the effect that value as used in Code § 363(f)(3) is synonymous with amount, this Court believes that the *Beker* analysis comports with Congressional intent in utilizing the term "value" versus the term amount in the statute.

■ *In re Beker, supra* 63 B.R. at 477, does point out, however, that the Court must conclude that the proposed sale price is the best price obtainable under the circumstances, *id.* citing *In re Hatfield Homes, Inc.,* 30 B.R. 353, 355 (Bankr.E.D. Pa.1983) and further that it must find special circumstances justifying the sale for less than the amount of liens over the objection of a secured creditor, *id.* citing *In re Bernhard Altman International Corp.,* 226 F.Supp. 201, 205–07 (S.D.N.Y. 1963).

Applying the rationale of *Beker* to the instant case, the Court concludes that, even without conducting an evidentiary hearing, which would only serve to significantly delay a sale of the marina property, the current appraisal submitted by Debtor in light of the bidding that occurred on December 19, 1989, is the best possible price that could be obtained for the property. That further both the status of the non-consenting creditor WPV as a non-consensual judgment lienor whose judgment is at least arguably subject to attack under Code § 547 and the apparent rapid depreciation of the property provide special circumstances which suggest that the Debtor has met the requirements of Code § 363(f)(3).

■ Turning to an analysis of Code § 363(f)(4), both Debtor and Crowley contend that that subsection has been satisfied, since at a minimum, the lien of WPV, the objector, is in bona fide dispute, and should that lien be avoided, the now withdrawn offer of $776,000.00 would easily exceed the sum of all of the other existing liens and leave significant equity for the Chapter 11 Debtor.

WPV postures that in order to satisfy the requirement of "bona fide dispute" the lien must be the subject of an adversary proceeding and there must be a high probability that the adversary proceeding will result in the avoidance of the lien. WPV points out that the validity of the judgment lien is not presently the subject of any adversary proceeding, and that assuming the Debtor intends to commence one based upon a preference pursuant to Code § 547, it can only proceed on the theory that the members of WPV are "insiders" within Code § 101(30), a contention that the Debtor cannot successfully maintain since WPV does not fall within any of the definitions found in the subsections of Code § 101(30).

Crowley, however, asserts in his Objection to sale at paragraphs 9, 10 and 11, that at least two members of WPV were employees of the Debtor, one of which was its general manager and thus, WPV could be deemed to be a person in control of the Debtor pursuant to Code § 101(30)(B)(iii). Crowley further claims that there is no debt due WPV, rather the $600,000.00 advanced by its members represents equity, rather than debt, and thus, the confessed judgment is a sham. Finally, Crowley suggests that the Debtor was caused to confess judgment in favor of WPV when it became apparent that Crowley would be successful in his suit versus the Debtor.

Bankruptcy Judge A. Thomas Small's decision in *In re Millerburg,* 61 B.R. 125 (Bankr.E.D.N.C.1986) is cited by both Crowley and WPV in support of their respective positions, however, the Court believes that WPV reads more into Judge Small's decision than its plain language will support.

WPV construes *In re Millerburg, supra,* 61 B.R. at 127, as requiring that the facts *must* suggest that the debtor has a high probability of success in the adversary proceeding which seeks to avoid the lien in order for a bona fide dispute to exist within the meaning of Code § 363(f)(4).

Bankruptcy Judge Small simply observed, however, that the facts in that par-

ticular case suggested that the debtor would have a high probability of success in avoiding the creditor's lien as a preference under Code § 547, however, the debtor had not even commenced an adversary proceeding. The Court commented that "[t]he *potential* preference action against GMAC would certainly qualify as a bona fide dispute for purposes of § 363(f)(4)." *Id.* page 128. (emphasis added).

This Court reads *In re Millerburg, supra,* 61 B.R. 125 as supporting the position of Crowley and the Debtor, and it concludes that Code § 363(f)(4) has been satisfied even though the Debtor has not as yet commenced the adversary proceeding versus WPV.

Based upon the foregoing, it is

ORDERED, that the offer of Utica Boat Service, Inc. and Robert J. Pernisi, Jr., in the sum of $776,000.00 is deemed withdrawn, and it is further

ORDERED, that the objection to the sale of WPV is denied and the objection of Crowley is deemed withdrawn, and it is further

ORDERED, that the Debtor shall be permitted to renotice the property known as the Wood Pointe Marine for sale pursuant to Code § 363(b)(1).