In re Charles H. COLLINS, Jr. and Jane W. Collins, Debtors.

Bankruptcy No. 94–41992.

United States Bankruptcy Court,
E.D. Virginia,
Newport News Division.

March 31, 1995.

Robert V. Roussos, Roussos & Langhorne, Norfolk, VA, for debtors.

Frank J. Santoro, Marcus, Santoro & Kozak, Portsmouth, VA, for Marcus, Santoro & Kozak.

Alan D. Albert, Mays & Valentine, Norfolk, VA, for Mays & Valentine.

Christopher M. Malone, Thompson & McMullan, Richmond, VA, for F.D.I.C.

## MEMORANDUM OPINION AND ORDER

DAVID H. ADAMS, Bankruptcy Judge.

This matter comes before the Court upon the motion by the debtors in possession requesting entry of an order approving the sale of real property not in the ordinary course of business and free and clear of liens. This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. § 157(b).

### STATEMENT OF FACTS

Charles and Jane Collins ("Collins") filed for relief under Chapter 11 of the Bankruptcy Code on October 28, 1994, and are now operating as debtors in possession. The Collins own a substantial amount of real property including approximately three acres of real property located in York County, Virginia, which they valued at $100,000 on their bankruptcy schedules. The property is encumbered by three liens: First Union Mortgage Corporation has a first priority lien against the property for approximately $26,757.00, Stan–Lee Properties Associates ("Stan–Lee") has a second priority judgment lien of approximately $47,000, and the law firms of Mays & Valentine ("Mays") and Marcus, Santoro and Kozak (MS & K) share a third priority lien in the approximate amount of $70,000. The debtors have negotiated a contract to sell the property to 217 Associates, Ltd., for $100,000. During the negotiation process, Stan–Lee agreed to reduce the amount of its lien by approximately $13,000 (to $31,000) in exchange for payment in full.

On January 18, 1995, the debtors filed the instant motion requesting this Court to approve the sale of real property not in the ordinary course of business and free and clear of liens, with the proceeds to be distributed to the lienholders of the property. The

Federal Deposit Insurance Corporation ("FDIC") filed a memorandum in opposition to the debtors' motion to sell. In their motion and subsequent argument, the FDIC effectively tried to challenge the validity of the third priority lien held by Mays and MS & K which arose out of a complex series of events in the earlier bankruptcy proceeding for a partnership in which Charles Collins was the general partner. At argument, the FDIC conceded that they were not objecting to the sale itself but to the proposed distribution of the proceeds to the lienholders. MS & K filed a response to the FDIC's motion, requesting the Court to overrule the objection by the FDIC, and approve the sale and subsequent distribution proceeds to the lienholders in order of priority. However, at argument, MS & K refuted allegations concerning the validity of their lien and objected to the proposed sale of the property. Although no motions were filed, counsel appearing on behalf of Mays, reiterated the arguments of counsel for MS & K.

### CONCLUSIONS OF LAW

As a preliminary matter, the Court limits its decision to the issue of whether the sale of real property belonging to the debtors in possession should be approved within the parameters of § 363(f) of the Bankruptcy Code. The Court will not address the issues raised in pleadings or arguments which concern the propriety or validity of liens against the York County property. Those issues are not properly before the Court, and will only be addressed when raised through the appropriate procedural mechanism.[1]

Section 363(f) of the Bankruptcy Code is the governing provision which gives a debtor in possession[2] the authority to sell property of the debtor free and clear of liens, providing that,

(f) The Trustee may sell property ... free and clear of any interest in such property of an entity other than the estate, only if—

---

1. See Bankruptcy Rule 7001(2).

2. 11 U.S.C. § 1107 confers upon the debtor in possession all of the rights, powers, duties and limitations of a Chapter 11 trustee.

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in a bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Section 363(f) is phrased in the disjunctive, such that only *one* of the enumerated conditions must be met in order for the Court to approve the proposed sale. However, we find that in the case at bar, a number of the conditions under § 363 have been met. Those particular conditions which warrant an in depth analysis are our findings that (f)(3) and (f)(4) have been satisfied.[3]

*§ 363(f)(3)*

■ There is a split of authority as to the interpretation of the phrase "... greater than the aggregate value of all liens on such property" found in § 363(f)(3). A number of courts have construed "value" to mean the face amount of the liens. Therefore, a sale free and clear could only be approved if the sale price exceeded the total amount of debts against the property. *See e.g., Matter of*

*Riverside Investment Partnership,* 674 F.2d 634, 640 (7th Cir.1982) (court should not approve sale unless satisfied that the sale proceeds *will fully compensate secured lienholder and produce some equity for the benefit of the estate* ) (emphasis in original); *In re Heine,* 141 B.R. 185, 189 (Bankr.D.S.D.1992) ("value" ... *is* synonymous with amount) (emphasis in original); *In re Terrace Chalet Apts.,* 159 B.R. 821 (N.D.Ill.1993); *In re Julien Co.,* 117 B.R. 910 (Bankr.W.D.Tenn. 1990) (sale not allowed when total liens are greater than the property). In the alternative, other courts have found that "value" should be defined as the secured value, not the face amount of liens. Utilizing an analysis which focuses on § 506(a), Courts have, under a number of different circumstances, approved sales where the price is lower than the face amount of liens, but greater than the secured value of the claims. *See e.g., In re WPRV–TV,* 143 B.R. 315 (D.P.R.1991); *aff'd in part, rev'd in part on other grounds,* 983 F.2d 336 (1st Cir.1993); *In re Milford Group, Inc.,* 150 B.R. 904 (Bankr.M.D.Pa. 1992); *In re Terrace Gardens Park Partnership,* 96 B.R. 707 (Bankr.W.D.Tex.1989). The Court is aware that both views are subject to criticism,[4] but agrees with latter line of cases, finding that the interpretation of "value" within the context of § 506(a) provides a better reasoned solution to this dilemma.[5]

---

3. From the facts given, we can find no prohibition under Virginia law rendering this type of sale impermissible and therefore, the requirement under § 363(f)(1) has been met.

4. When "value" is construed to mean face amount of the liens, it obviates the need for § 363(k) (providing a secured creditor the right to bid the amount of its debt to prevent a sale over its objection for less than what the creditor is due), and may enable an undersecured creditor to interfere with a sale which could greatly benefit the estate. *See In re Terrace Gardens,* 96 B.R. at 712. On the other hand, when courts construe "value" to be the extent of the secured creditor's interest under § 506(a), it not only renders the phrase "all liens" on the property ineffectual, but frustrates the general view that sales out of the ordinary course should produce equity. *Id.* at 713.

5. *Richardson v. Pitt County (In the Matter of Stroud Wholesale, Inc.),* 47 B.R. 999, 1002 (E.D.N.C.1985) is an oft cited case for the proposition that "value" under § 363(f)(3) should be

interpreted as face amount, justifying a sale only when sale proceeds will fully compensate the secured creditors and produce equity for the estate. The Fourth Circuit, in an unpublished decision, affirmed *Stroud* by stating: "[w]hile we do not necessarily agree with all that was said in the opinion of the district court in reversing the bankruptcy court, we think that the district court reached a correct, proper, and equitable result." *In re Stroud Wholesale, Inc.,* No. 85–1422, 1986 WL 181749 (4th Cir. Jan. 21, 1986) (unpublished decision). It is clear to this Court that the Fourth Circuit agreed with the result of *Stroud* which denied the motion to sell property, but did not ratify the reasoning behind the district court's analysis of the issue under § 363(f)(3). The only other case in the Eastern District of Virginia dealing with the construction of § 363(f)(3), did not provide an in depth analysis, as it was unnecessary because the property was being sold for a price much greater than the face value of liens on the property. *King v. Board of Supervisors of Fairfax County (In re A.G. VanMetre, Jr., Inc.),* 155 B.R. 118 (Bankr.E.D.Va.1993).

When construing statutory language, terms of particular meaning to the subject matter are to be interpreted in line with that meaning, and in light of other provisions of the statute. *In re Beker Industries,* 63 B.R. 474, 475 (Bankr.S.D.N.Y.1986) (citations omitted). Section 506(a) of the Bankruptcy Code also utilizes the term "value", and suggests that with respect to the interest of a secured creditor, "value" means actual value as determined by the Court, rather than the face amount of the lien.[6] The Supreme Court has ruled that value in § 506(a) means the same as "value" under other provisions of the Code, specifically §§ 361(1) and (2) which address adequate protection. *United Savings Association of Texas v. Timbers of Inwood Forest Associates,* 484 U.S. 365, 369, 108 S.Ct. 626, 630, 98 L.Ed.2d 740, 747–48 (1988). In light of § 363(e) which makes adequate protection an integral element of any proposed sale under § 363(f), it is therefore logical to extend the definition of "value" with regard to a secured creditor's interest to "value" in § 363(f)(3). *See In re Terrace Gardens Park,* 96 B.R. at 713. Further, this analysis gives deference to the Congressional intent in utilizing the term "value" rather than "amount" in the statute. *In re Oneida Lake Development, Inc.,* 114 B.R. 352, 357 (Bankr.N.D.N.Y.1990).

The buyers have offered to purchase the property for a price of $100,000. Notwithstanding Stan–Lee's offer to adjust the debt due, the face amount of the liens approach $128,000. Rather than establishing "value" by the face amount of all the liens on the property at $128,000, under § 506(a), the Court would need to determine the actual "value" of the secured creditor's interest (*i.e.,* the value of the property). If the Court finds that $100,000 is the "value" of the property and therefore the "value" of the secured creditors' interest, the sale could not be approved under § 363(f)(3) since the price of-

fered would not technically fall within the statutory language requiring the purchase price to *exceed* the value of the secured creditor's interest.

Other courts have addressed similar situations in which the debtor in possession or Trustee proposes to sell property for a price less than or equal to the aggregate amount of liens encumbering the property. Case law indicates that courts must address these types of sales on a case by case basis, and give judicial consent only after the surrounding circumstances are carefully scrutinized and a determination is made that the sale is justified. *See In re Terrace Gardens,* 96 B.R. at 713. Factors for this Court to consider in determining whether "special circumstances" exist include what chapter the case is filed under, whether this is a major or sole asset of the estate, whether the proposed sale is a piecemeal substitution for a plan of reorganization, and the overall benefit to the estate. In *In re Beker Industries,* Judge Buschman found that courts must not only find special circumstances justifying a sale for less than the amount of liens, but must also determine that the proposed sale price is the best price obtainable *under the circumstances.* 63 B.R. at 477 (citing *In re Hatfield Homes,* 30 B.R. 353, 355 (Bankr. E.D.Pa.1983)) (emphasis added).

The Court finds that both requirements under the *Beker Industries* standard exist so as to warrant sale of this property. First, "special circumstances" exist in this situation. This case has been filed under Chapter 11 with the purpose of reorganizing rather than liquidating, and in light of the policy objectives behind Chapter 11, as compared to Chapter 7, the debtors should be afforded greater latitude in selling this parcel of real property. Further, this parcel is not the debtors' sole asset, and any unsecured

---

Therefore, we do not find our analysis in this case inconsistent with any ruling in this district or by the Fourth Circuit.

**6.** 11 U.S.C. 506(a) provides that, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such secured creditor's interest in the estate's interest in such property, ... and is an unsecured claim

to the extent that the value of such creditor's interest is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

deficiency claim by the lienholders has the potential to at least be partially satisfied from the other assets of the estate. Most importantly, the Court finds that the estate will substantially benefit from the sale of this proposed property. One of the conditions of this sale is the agreement by the second lienholder to reduce its secured claim against the property, which will enable the third lienholders (and objecting parties) to receive payment on a larger portion of their secured claim. As payment of the third lienholders' secured claim increases, any potential deficiency claims decrease, thus placing general unsecured creditors in a position to receive an even larger percentage on their claims. The Court views the sale of this property as a prudent decision and does not consider it to be a piecemeal substitution for filing a plan. Second, the Court finds that the price of $100,000 is the best price obtainable under the circumstances.[7] In this case, the debtors in possession have indicated that if the property is not sold expeditiously, the deal may be lost. Furthermore, the objecting lienholders did not dispute the price offered for the property. We find it persuasive, in this case, that the price obtained is not lower than the estimated market value by the debtors in their schedules. It would indeed be a different situation if the property had been valued at $100,000, but sold for $75,000. It is clear that delaying this sale would unfairly prejudice all of the creditors, and $100,000 appears to be a reasonable purchase price for the property. In conclusion, the sale proposed by the debtor meets the requirements under § 363(f)(3), and is therefore warranted.

### § 363(f)(4)

▮▮▮▮ The Court is also called upon to interpret the phrase "bona fide dispute" in § 363(f)(4) which is undefined in the Code. "Bona fide dispute" is also utilized in § 303 in connection with the nature of claims asserted as a basis for involuntary Chapter 7

petitions, and in light of the construction rules as articulated *supra*, interpretations of "bona fide dispute" under § 303 have been illustrative. *See In re Milford Group*, 150 B.R. at 906 (citing *Sipple v. Atwood (In re Atwood)*, 124 B.R. 402, 406 (S.D.Ga.1991)). The standard adopted by the Seventh Circuit Court of Appeals states that courts must determine "whether there is an objective basis for either a factual or legal dispute as to the validity of the debt." *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr.N.D.Ill. 1991) (citing *In re Busick*, 831 F.2d 745, 750 (7th Cir.1987)). Clearly this standard does not require the Court to resolve the underlying dispute, just determine its existence. *Id.* Courts utilizing this definition have held the parties to an evidentiary standard; evidence must be provided to show factual grounds that there is an "objective basis" for the dispute. *Id.* In this case, the FDIC, MS & K, and Mays have written and argued on the issue of whether the third priority lien is valid, albeit in an inappropriate forum,[8] and we hold that the evidentiary standard required has been met in this case.

The terms of the proposed sale of real property located in York County, Virginia meet the conditions as set forth in both § 363(f)(3) and (f)(4), and therefore, the Court approves the sale under § 363(f) free and clear of liens.

### § 363(e)

▮▮▮▮ Under § 363(e) of the Code, the Court has the authority to condition or prohibit any sale of property as is necessary to provide adequate protection to the secured creditor's interest. The commonly accepted method for adequate protecting a secured creditor when a sale is authorized under § 363(f) is to order the liens to attach to the proceeds of the sale. H.R.Rep. No. 595, 95th Cong., 1st Sess. 345 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787; *See* 2 Collier on Bankruptcy ¶ 363.07 at p. 363–35 (15th Ed.1995). So to protect the interests of MS & K and

---

7. Utilizing § 506(a) as the touchstone of our analysis suggests that the Court must conduct an evidentiary hearing to determine the amount of the collateral. However, courts have dispensed with evidentiary hearings in instances where such hearings would only serve to significantly delay a sale of property and where the court finds that the price is the best that could be

obtained for the property. *See In re Oneida Lake Development*, 114 B.R. at 357.

8. We recognize, however, that to be a "bona fide dispute" under § 363(f)(4), the propriety of the lien does not necessarily have to be the subject of an immediate or concurrent adversary proceeding. *In re Oneida Lake*, 114 B.R. at 358.

Mays, their liens must attach to proceeds of this sale under § 363(f).[9]

Based upon the foregoing, it is hereby ADJUDGED, ORDERED and DECREED that the debtors in possession have the authority to sell the property to 217 Associates for the sale price of $100,000, as provided for in the sales contract, that the third priority lien of Marcus, Santoro and Kozak and Mays & Valentine attaches to the net proceeds arising from the sale, and that upon sale of the property, the net proceeds be paid at closing to all lienholders in the order of their priority and by the agreement of Stan–Lee.

---

9. The Court finds it necessary to note that adequate protection, as defined by § 361(3), also includes "indubitable equivalence", which would suggest a secured creditor could obtain protection broader than the mere attachment of liens to sale proceeds. However, under § 363(o)(2), the secured creditor(s) bears the burden of proof to establish the extent of its interest, *i.e.*, the value of the collateral. By failing to object to the price of the property as set forth by the debtors, MS & K and Mays have effectively stipulated to the value of the property, and have eliminated raising any arguments that they are not receiving the indubitable equivalent by maintaining a lien on the proceeds.