**In re WDH HOWELL, LLC, et al., Debtors.**

**Criimi Mae Services Limited Partnership, Appellant,**

v.

**WDH Howell, LLC, et al., Appellees.**

**Bankruptcy No. 01–50618(WHG).**
**Civ.A. Nos. 03–172(MLC),**
**02–5880(MLC).**

United States District Court,
D. New Jersey.

Aug. 27, 2003.

the 11–21–02 bankruptcy order; and (3) deny as moot the motion to stay pending appeal.

Venable, Baetjer & Howard, LLP (Gregory A. Cross, of counsel), Baltimore, MD, Pitney, Hardin, Kipp & Szuch LLP (Richard M. Meth, of counsel), Morristown, NJ, for Appellant.

Larry Lesnick, Esq., Ravin, Greenberg & Marks, Roseland, NJ, for Appellee WDH Howell, LLC.

Andrew J. Kelly, Esq., Kelly & Brennan, PC, Spring Lake, NJ, for Appellee Solomon Dwek.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on appeal of the Order of the United States Bankruptcy Court for the District of New Jersey ("the bankruptcy court") dated November 21, 2002 ("11–21–02 bankruptcy order") pursuant to 11 U.S.C. § 363, approving the sale of real property from debtor-appellee WDH Howell, LLC ("WDH") to appellee Solomon Dwek ("Dwek") free and clear of all liens, claims, and encumbrances. Creditor-appellant, Criimi Mae Services Limited Partnership ("Criimi Mae"), opposed the sale before the bankruptcy court and now (1) appeals; and (2) moves to stay pending appeal. We have jurisdiction pursuant to 28 U.S.C. § 158(a). For the reasons stated herein, we will (1) grant the appeal; (2) reverse

### BACKGROUND

WDH owns environmentally contaminated commercial real estate in Howell, New Jersey ("the property") as a debtor-in-possession.[1] (App., Ex. B ("Sale Motion") ¶ 5; Addendum to Designation of Items in Record on Appeal ("Record Addendum"), Ex. 13, Appellant's Obj. to Sale Motion, Exs. 1–8.) See 11 U.S.C. § 1107. In October 1997, WDH executed a promissory note ("the note") in the principal amount of nine million dollars, repayment of which is secured by a mortgage on the property ("the mortgage"). (Appellant's Proof of Claim, Addendum at 1–2 & Exs. A–B.) Criimi Mae is the beneficial owner of the note and the mortgage and, therefore, has a first-priority lien against the property.[2] (Id.)

WDH filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("the Code"), on January 16, 2001. (Record Addendum, Ex. 1.) See 11 U.S.C. §§ 1101–74. The property is the principal asset of the bankruptcy estate. (Record Addendum, Exs. 1–2.) Criimi Mae claims that WDH owed $11,882,560.92 in principal, interest, fees, and costs as of the petition date. (Appellant's Proof of Claim, Addendum at 2.) Accordingly, Criimi Mae filed a proof of claim on June 14, 2001. (Id.)

WDH, on July 19, 2002, filed a motion to approve the sale of the property ("sale motion") to Rocky Stefansky ("Stefansky")

1. The property is designated as Block 49, Lots 30, 31, 44, 45, 47, 49, and 50, and Block 221, Lot 4 on the tax map of Howell, New Jersey. (App. to Appellant's Br. ("App."), Ex. H ("Appellant's Proof of Claim"), Addendum at 2.)

2. Holliday Fenoglio was the mortgagee. (Appellant's Proof of Claim, Addendum at 1.)

Criimi Mae, in its capacity as Special Servicer for LaSalle National Bank, became the beneficial owner of the mortgage and the note as "Trustee for the Registered Holders of First Union–Lehman Brothers Commercial Mortgage Trust II, Commercial Mortgage Pass–Through Certificates, Series 1997–C2." (Id.)

for $8,250,000.00, pursuant to § 363.[3] (Sale Motion.) Criimi Mae filed an objection to the sale motion on August 14, 2002. (Record Addendum, Ex. 13.)

The bankruptcy court conducted a nonevidentiary hearing on the sale motion on August 21, 2002 ("8–21–02 hearing"), where it heard oral argument from the parties' counsel regarding the viability of the sale to Stefansky. (App., Ex. F, Bankr.Tr. dated 8–21–02 ("1st Tr.").) The bankruptcy court adjourned the 8–21–02 hearing to allow for further discovery on the availability of funding for investigation and remediation of environmental contamination on the property, including (1) $280,000.00 already remitted by WDH to the NJDEP; and (2) existing insurance coverage. (*Id.* at 27–28, 66–70, 75–92.)

The bankruptcy court continued the hearing on October 9, 2002 ("10–9–02 hearing"). (App., Ex. G, Bankr.Tr. dated 11–21–02 ("2d Tr.").) Two new bidders in addition to Stefanksy appeared at the 10–9–02 hearing, and the bankruptcy court permitted all three bidders to participate in an auction to sell the property. (*Id.* at 90.) Dwek was the highest bidder. (*Id.* at 120–21.)

Criimi Mae reserved its rights on appeal by (1) requesting to present live testimony and other evidence; (2) arguing that WDH had the burden to present evidence demonstrating the appropriateness of the sale; and (3) noting that the bankruptcy court had not received any evidence as to the value of the property once remediated or the existence of insurers who are willing or obligated to pay for remediation. (1st Tr. at 30; 2d Tr. at 104.) However, the bankruptcy court did not conduct an evidentiary hearing or accept any evidence regarding, *inter alia*, the value of the property or the business propriety of the sale.[4]

The bankruptcy court found that (1) WDH provided "proper, timely and sufficient notice" of the sale motion; (2) the sale of the property to Dwek reflected a "sound exercise of WDH's business judgment;" (3) Dwek was a good faith purchaser; and (4) the requirements of §§ 363(b) and (f) were satisfied. (App., Ex. A ("11–21–02 Bankr.Order") ¶¶ 3, 7–9.) Accordingly, the bankruptcy court approved the sale of the property free and clear of all liens, claims, and encumbrances to Dwek for $10,100,000.00, with $1,720,000.00 set aside in escrow with WDH's counsel for

---

**3.** WDH argued in support of the sale motion that the sale was "in the best interest of the estate and [ ] supported by sound business reasons." (Sale Motion at 5.) Specifically, WDH "determined, in its best business judgment, that the sale of the [p]roperty w[ould] yield the best result for [WDH], its creditors and the estate, as [WDH] lack[ed] the cash flow necessary to service the mortgage on the [p]roperty or to maintain the same on an ongoing basis." (*Id.* at 2.) It further contended that the property should be sold "as quickly as possible in order to preserve the maximum realizable value thereof and further because of the language in [the sale agreement] requiring the requisite bankruptcy court approval within specified time frames." (*Id.*)

The bankruptcy court, on August 7, 2002, entered an order, *inter alia*, approving bid-

ding procedures for the sale of the property and specifying that notice be served by counsel for WDH upon the U.S. Trustee, the New Jersey Department of Environmental Protection, the New Jersey Attorney General, and specified creditors. (*Id.*, 8–7–02 Bankr.Order.) WDH complied with these notice requirements. (Record Addendum, Exs. 9 & 10.)

**4.** The bankruptcy court stated at the first hearing, "right at the moment I'm not sure we need to take evidence" and "I don't have to take testimony." (1st Tr. at 46, 70.) At the second hearing, the parties presented no evidence or further information regarding the cost of remediation, the value of the property after remediation, or the availability of insurance to pay for remediation. (2d Tr. at 8–11, 21–24.)

investigation and remediation of environmental contamination on the property. (11–21–02 Bankr.Order ¶ 4.) We construe this arrangement as creating an actual sale price of $8,380,000.00.[5]

Criimi Mae now appeals the 11–21–02 bankruptcy order, arguing, *inter alia,* that the sale free and clear of all liens, claims, and encumbrances was inappropriate under § 363(f) which requires that the sale price be greater than the aggregate "face amount" of all liens on the property. (Appellant's Br. at 9–11.) WDH and Dwek oppose the appeal, arguing that (1) § 363(f) only requires that the sale price equal or exceed the aggregate economic value of all liens on the property; and (2) the sale to Dwek satisfied this requirement. (Dwek's Br. at 5–7; WDH's Br. at 4.) Criimi Mae counters that even if its interpretation of § 363(f) is wrong, the sale was inappropriate under §§ 363(b) and (f) because the bankruptcy court failed to entertain any evidence supporting, *inter alia,* the value of the property and the business propriety of the sale. (Appellant's Br. at 8–9, 12–13.)

## STANDARD OF REVIEW

 A district court must accept a bankruptcy court's findings of fact unless those findings are clearly erroneous. *In re Reid,* 757 F.2d 230, 233 (10th Cir.1985). To the extent that a question presented is one of law, the district court must exercise plenary review. *See In re Sharon Steel Corp.,* 871 F.2d 1217, 1222–23 (3d Cir. 1989). If the district court finds that the underlying bankruptcy record is inadequate for meaningful appellate review, it

may remand the matter for further fact finding or an evidentiary hearing. *See, e.g., In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143, 148–49 (3d Cir.1986); *Ananko v. Harsanyi,* 91 B.R. 231, 237–38 (D.N.J. 1988)

## DISCUSSION

A debtor ordinarily must obtain confirmation of a plan of reorganization before selling all or substantially all of its assets. *See generally* 11 U.S.C. §§ 1121–29. Section 363, however, is an exception to this general rule. Under § 363(b)(1), a debtor-in-possession, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, according to § 363(f), a § 363(b) sale can be made "free and clear of any interest" in the property of an entity other than the estate if:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) **such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;**

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

(Emphasis added).

The parties agree that §§ 363(f)(1), (2), (4), and (5) do not apply. They dispute

5. The bankruptcy court further ordered that (1) the $1,720,000.00 be used together with the $280,000.00 already remitted by WDH to the NJDEP; (2) notice be given to Criimi Mae five days before any disbursements from the escrow are made; (3) Dwek be responsible for any excess investigation and remediation costs; (4) any unused portion of the escrow be paid to Criimi Mae; and (5) the holders of all liens, claims, and encumbrances on the property, including Criimi Mae, shall have such liens attach to the net proceeds of the sale. (11–21–02 Bankr.Order ¶¶ 5, 12.)

whether the sale of the property to Dwek free and clear of all liens, claims, and encumbrances meets the requirements of § 363(f)(3). Our resolution of this dispute depends upon the meaning of "value" in that section, an issue upon which courts have disagreed.

Some courts interpret value in § 363(f)(3) to mean the "face amount" of the claim secured by the lien, i.e. the amount owed to the lienholder ("face value of the liens"). *See, e.g., In re Canonigo,* 276 B.R. 257, 260–64 (N.D.Cal.2002).[6] Other courts have interpreted it to mean the economic value of the lien as determined by the fair market value of the property. *See, e.g., In re Beker Indus. Corp.,* 63 B.R. 474, 475–78 (Bankr.S.D.N.Y. 1986).[7] One court provided an explanatory example:

> [I]f the property to be sold has a fair market value of $100,000 and is subject to a lien securing a $150,000 claim, a court reading "value" to mean that portion of the claim secured by property with an economic value would permit a sale for $100,000. A court reading "value" to mean the full face amount of the claim secured by a lien would only permit a sale for $150,000 or more.

*Canonigo,* 276 B.R. at 259. We will refer to the first view as the "face value approach" and the second view as the "economic value approach."

Courts following both approaches attempt to interpret value in a way that is consistent with other sections of the Code. Courts following the economic value approach reason that value in § 363(f)(3) should have the same meaning as in 11 U.S.C. § 506(a). *See, e.g., Beker,* 63 B.R. at 476. Section 506(a) states that

> [a]n allowed claim of a creditor secured by a lien on property ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The term "value" in § 506(a), thus, indicates the economic value of a creditor's interest for purposes of determining whether and to what extent the creditor's claim is secured. *See Beker,* 63 B.R. at 476. According to the *Beker* court, "[t]hat indication and the last sentence of § 506(a) requiring determination of value upon disposition of an asset standing as collateral strongly support the conclusion that the term 'value', as employed in § 363(f)(3) is to be similarly interpreted." *Id.*

A court following the face value approach, on the other hand, points out that Congress consistently refers to the value of a secured party's "interest" when it intends to denote economic value. *Terrace*

---

**6.** Other cases supporting this view are *In re Terrace Chalet Apts., Ltd.,* 159 B.R. 821, 825–28 (N.D.Ill.1993); *In re Stroud Wholesale, Inc.,* 47 B.R. 999, 1001–02 (E.D.N.C.1985); *In re Feinstein Family P'ship,* 247 B.R. 502, 509 (Bankr.M.D.Fla.2000); *In re Perroncello,* 170 B.R. 189, 191–92 (Bankr.D.Mass.1994); *In re Heine,* 141 B.R. 185, 189 (Bankr.D.S.D. 1992).

**7.** Other cases supporting this view are *In re WPRV–TV, Inc.,* 143 B.R. 315, 320 (D.P.R.

1991), *vacated on other grounds,* 165 B.R. 1 (1992), *rev'd on other grounds,* 983 F.2d 336 (1st Cir.1993); *In re WBQ P'ship,* 189 B.R. 97, 105–06 (Bankr.E.D.Va.1995); *In re Collins,* 180 B.R. 447, 450–52 (Bankr.E.D.Va.1995); *In re Milford Group, Inc.,* 150 B.R. 904, 906 (Bankr.M.D.Pa.1992); *In re Terrace Gardens P'ship,* 96 B.R. 707, 712–16 (Bankr.W.D.Tex. 1989); *In re Hatfield Homes, Inc.,* 30 B.R. 353, 355 (Bankr.E.D.Pa.1983).

*Chalet,* 159 B.R. at 826 (citing 11 U.S.C. §§ 361, 506(a), 1129(a)(7)(B)). Because § 506(a) refers to "the extent of the value of such creditor's *interest,*" the *Terrace Chalet* court reasons that the language of that section actually lends further support to its view. § 506(a) (emphasis added); *Id.* at 827.

We find that this search for consistency in the Code has led to ambiguous results.[8] Accordingly, we decline to rely on either reasoning and conduct our own analysis employing accepted principles of statutory construction.

■■■ "The role of the courts in interpreting a statute is to give effect to Congress's intent." *Idahoan Fresh,* 157 F.3d at 202. The first step in this process is to look to the plain language of the statute. *Id.* "Where statutory language is plain and unambiguous, further inquiry is not required, except in the extraordinary case where a literal reading of the language produces an absurd result." *Id.* We must consider not only whether a term at issue has a plain meaning, but also whether the meaning of that term can be "gleaned from the surrounding language" of the provision of which it is part. *See Scafar Contracting, Inc. v. Sec. of Labor,* 325 F.3d 422 (3d Cir.2003). In doing so, we apply a common-sense approach. *See United States v. Sherman,* 150 F.3d 306, 317 (3d Cir.1998).

The bankruptcy code itself does not provide a definition of value. However, value in § 363(f) cannot mean economic value if it is read in the context of the preceding term "greater than." Economic or "fair market" value is "[t]he amount at which property would change hands between a willing buyer and a willing seller." Black's Law Dictionary 597 (6th ed.1990). Accordingly, "the sale price for overencumbered property can never be greater than the aggregate economic value of the liens on

8. Both approaches also attempt to support their interpretations with the canon instructing courts to avoid an interpretation of a statute which renders another element of the statute superfluous ("canon to avoid surplusage"). *See Idahoan Fresh v. Advantage Produce Inc.,* 157 F.3d 197, 202 (3d Cir.1998). Courts following the economic value approach argue that the face value approach obviates the need for § 363(k) which provides a secured creditor the right to bid the amount of the debt to prevent a sale for less than that amount. *Terrace Gardens,* 96 B.R. at 712; *Collins,* 180 B.R. at 450 n. 4. We disagree with this reasoning; a creditor may have good reason not to bid on the property and instead avail itself of the creditor protections afforded under Chapter 11. *See WBQ,* 189 B.R. at 102 (noting that § 363(b) should not be used to circumvent Chapter 11 creditor protections). In the present case, for example, Criimi Mae does not wish to foreclose or bid on environmentally contaminated property. (1st Tr. at 25–26.)

Courts following the face value approach argue that the economic value approach makes § 363(f)(5) superfluous. *See, e.g., Ter-* *race Chalet,* 159 B.R. at 827. These courts contend that § 363(f)(5), which provides that property may be sold free and clear of any interest in the property if the interest holder "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest," implicitly refers to § 1129(b)(2), which provides that a secured creditor could be compelled to accept the economic value of its lien, provided certain other requirements are met. *Id.* Thus, they reason that a debtor would not endeavor to meet the additional requirements of § 363(f)(5) if it could compel the creditor to accept economic value pursuant to § 363(f)(3). *Id.* We disagree; § 363(f)(5) would not become superfluous because it also applies to unsecured interests in property that could be reduced to a specific monetary value. *In re Trans World Airlines, Inc.,* 322 F.3d 283, 289–91 (3d Cir.2003) (distinguishing § 363(f)(5) which applies to any interest in property from § 363(f)(3) which applies specifically to liens). Accordingly, we disagree with the reasoning of both approaches in their applications of the canon to avoid surplusage.

the property." [9] *Canonigo,* 276 B.R. at 262–63. The *Canonigo* court provided an explanatory example:

> [I]f property encumbered by a senior lien securing a debt of $75,000 and a junior lien securing a debt of $50,000 is proposed to be sold for $100,000, the aggregate economic value of the liens is $100,000. If someone overbids and proposes to buy the property for $125,000, the aggregate economic value of the liens would increase to $125,000.

*Id.* The sale price could be greater than the aggregate economic value of the liens on a piece of property only if the property was underencumbered, i.e. the sale price also exceeded the face value of the liens. Thus, in the *Canonigo* example, "if the property were sold for $150,000, the aggregate economic value of the liens would still only be $125,000," because liens can never be worth more than their face value. *Id.*

Courts following the economic value approach have either overlooked or dodged this dilemma, allowing the sale free of liens even when the sale price equaled the aggregate economic value of the liens. For example, where buyers offered to purchase a piece of property for $100,000.00, the *Collins* court stated:

> If the Court finds that $100,000 is the value of the property and therefore the value of the secured creditors' interest, the sale could not be approved under § 363(f)(3) since the price offered would not technically fall within the statutory

language requiring the purchase price to *exceed* the value of the secured creditor's interest. Other courts have addressed similar situations in which the debtor in possession ... proposes to sell property for a price less than or equal to the aggregate amount of liens encumbering the property. Case law indicates that courts must address these types of sales on a case by case basis and give judicial consent only after the surrounding circumstances are carefully scrutinized and a determination is made that the sale is justified.

*Collins,* 180 B.R. at 451; *see also WBQ,* 189 B.R. at 105 (holding "when the purchase price equals the value of the liened property, the sale is still permissible under § 363(f)(3) if the proposed price is the best obtainable under the circumstances, and if there are special circumstances justifying the sale for less than the amount of the liens"); *Beker,* 63 B.R. 474 (overlooking the issue).[10]

We refuse to evade the plain meaning of § 363(f)(3) in this way. Assuming the auction in this case was fair and adequate, the economic value of the property at the time of the sale to Dwek was $8,380,000.00. (*See supra* note 5 and accompanying text.) Because the property is overencumbered, the aggregate economic value of all liens on the property is also $8,380,000.00 and, therefore, not less than the sale price. The aggregate face value of the claim secured by Criimi Mae's

---

9. A public auction is often a reliable method of determining economic value. *Abbotts Dairies,* 788 F.2d at 149. ("Generally speaking, an auction may be sufficient to establish that one has paid value for the assets of a bankrupt.") An auction is inadequate where bad faith or collusion is involved, or where the auction is not adequately publicized. *Id.* However, in those cases, the sale price would be less than, not greater than economic value.

10. One court seemed to hold, based upon appraisals and other evidence, that a debtor's property was sold for more than its economic value. *Terrace Gardens,* 96 B.R. at 710. The *Terrace Gardens* court, therefore, concluded that the sale price was greater than the aggregate economic value of the liens. *Id.* at 713. Because we find that this view is contrary to the meaning of economic value, we decline to follow it. *See* Black's Law Dictionary 597 (6th ed.1990).

lien was $11,882,560.92 as of the petition date and, thus, greater than the sale price. (Appellant's Proof of Claim, Addendum at 2.) Accordingly, the sale free and clear of all liens, claims, and encumbrances was inappropriate under both the economic value and face value approaches. In light of this inevitable outcome, we conclude that Congress must have meant face value when it stated "value" in § 363(f)(3).[11]

This conclusion is consistent with the "general rule" that "the bankruptcy court should not order property sold free and clear of liens unless the court is satisfied that the sale proceeds will fully compensate secured lienholders and produce some equity for the benefit of the bankrupt's estate." *Matter of Riverside Inv. P'ship*, 674 F.2d 634, 638–41 (7th Cir.1982). The *Beker* court notes that a reorganization plan may provide for the sale of collateralized property for less than the face value of the liens. 63 B.R. at 477 (citing 11 U.S.C. § 1129(b)(2)(A)(ii)). Section 363, however, is an exception to the general rule that a debtor must obtain confirmation of a reorganization plan before selling all or substantially all of its assets. We

hold that the plain language of § 363(f)(3) indicates Congress' intent to limit this exception so that it does not swallow the general rule.

### CONCLUSION

We conclude that a debtor-in-possession cannot sell its property free and clear of all liens under § 363(f)(3) unless the sale price is greater than the aggregate face value of all liens on the property. Because the price at which the bankruptcy court ordered the property to be sold to Dwek is less than the face amount of the claim secured by Criimi Mae's lien, we find that the bankruptcy court erred in ordering the sale free and clear of all liens, claims, and encumbrances. Therefore, we will (1) grant Criimi Mae's appeal; (2) reverse the 11–21–02 bankruptcy order; and (3) deny as moot the motion to stay pending appeal.[12]

---

**11.** While we need not turn to extrinsic evidence of legislative intent, we note that legislative reports and history also support our interpretation. According to House and Senate reports, a debtor-in-possession "may sell free and clear if ... the sale price of the property is greater than the *amount secured by the lien.*" H.R.Rep. No. 95–595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6301–02 (emphasis added); S.Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5842 (emphasis added).

Moreover, § 363(f)(3) previously provided that property could be sold free and clear of all interests if "the price at which the property is sold is greater than the aggregate value of such *interest.*" 11 U.S.C. § 363(f) (1978) (emphasis added). In 1994, Congress replaced "such interest" with "all liens on such property." Bankr.Amends. & Fed. Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, 372 (codified as amended at 11 U.S.C.

§ 363 (1984)). Thus, in accordance with the *Terrace Chalet* court's view that Congress consistently refers to the value of a secured party's interest when it intends to denote economic value, our interpretation is consistent with the legislative history of § 363(f)(3). *See Stroud*, 47 B.R. at 1001–02; *Terrace Chalet*, 159 B.R. at 827.

**12.** Even if we were to follow the economic value approach, we still would not uphold the 11–21–02 bankruptcy order. Courts ordering a sale of property pursuant to § 363(b), whether or not the sale is free and clear of any interest in the property, have required debtors to demonstrate a sound business purpose for conducting the sale prior to confirmation of a reorganization plan. *See, e.g., Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir.1986); *In re Lionel Corp.*, 722 F.2d 1063, 1068–69 (2d Cir.1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76

(D.Del.1991); *see also In re Solar Mfg. Corp.,* 176 F.2d 493, 495 (3d Cir.1949) (pre-confirmation sale authorized only upon showing emergency under 1898 Bankruptcy Act). They further have considered whether adequate and reasonable notice was provided to interested parties, the sale price was fair and reasonable, and the purchaser proceeded in good faith. *E.g., Del. & Hudson,* 124 B.R. at 176. These courts have permitted sales based upon evidence in the record, including (1) testimony regarding property's value and the urgent need to sell; (2) appraisals; and (3) indications that a public auction was properly advertised. *See id.* at 179–80 (permitting sale based upon evidence indicating property rapidly losing value and sale price fair and reasonable); *In re Titusville Country Club,* 128 B.R. 396 (Bankr.W.D.Pa.1991) (noting debtor properly advertised sale). Moreover, courts following the economic value approach and allowing a sale free and clear of liens generally have required the debtor to demonstrate that the sale for less than the aggregate face value of the liens was justified by special circumstances at an evidentiary hearing. *See, e.g., Beker,* 63 B.R. at 477; *Hatfield Homes,* 30 B.R. at 355 (analyzing testimony and appraisals); *cf. Collins,* 180 B.R. at 452 n. 7 (bankruptcy courts may dispense with evidentiary hearing where it would only significantly delay sale; dispensing with hearing because, *inter alia,* property subject to sale not debtors' sole asset and objecting lienholders did not dispute sale price); *In re Oneida Lake Dev., Inc.,* 114 B.R. 352, 356 (Bankr.N.D.N.Y.1990) (dispensing with hearing but relying on appraisals and other evidence of value). Although Criimi Mae raised objections regarding, *inter alia,* the value of the property and the business propriety of the sale, the bankruptcy court ruled that the sale was appropriate without consulting any evidence or conducting an evidentiary hearing. Accordingly, if we were not to reverse based on our interpretation of § 363(f)(3), we would remand for the bankruptcy court to further develop the factual record.