**In re Leon Carol PIERCE, Barbara Ann Pierce, Debtors.**

No. 05–73327.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 28, 2008.

Patrick H. O'Brien, Pomeroy, OH, for Debtors.

Kegler Brown Hill & Ritter Co., Larry J. McClatchey, Columbus, OH, for trustee.

*ORDER GRANTING TRUSTEE'S MO-TION FOR SUMMARY JUDGMENT (DOC. NO. 43) RE: MOTION TO VACATE ORDER FOR PAYMENT OF FEES AND EXPENSES (DOC NO. 33)*

CHARLES M. CALDWELL,
Bankruptcy Judge.

This Order addresses a Motion for Summary Judgment filed by Larry J. McClatchey ("Trustee"). It relates to a Motion to Vacate the Order for Payment of Fees and Expenses (Doc. No. 33) filed on behalf of Mortgage Electronic Registration Systems, Inc., as Nominee for CitiMortgage, Inc., ("Creditor"). In the latter motion, the Creditor seeks to vacate an Order for Payment of Fees and Expenses (Doc. No. 31) entered more than a year ago, on March 23, 2007.

Based upon a review of the Summary Judgment Motion, including the attached affidavit and documents, the Creditor's Response, its affidavit, and the statements of counsel, the Court has determined that the Trustee is entitled to summary judgment denying the Creditors' Motion to Vacate the Order for Payment of Fees and Expenses. As the essential facts are not in dispute, the Court will briefly discuss the events that lead to this conclusion.

On October 13, 2005, this case was filed as a Chapter 7 on behalf of Leon C. and Barbara A. Pierce ("Debtors"). That same day the Trustee was appointed. The Debtors scheduled their residence located at 29544 St. Rt. 124, Langsville, Ohio. This property was originally purchased on March 21, 1977, and on October 31, 2001, the Debtors purported to grant a lien to GVC Mortgage, Inc. in exchange for a loan of $102,000.00, CitiMortgage, Inc., ("Citi-Mortgage") services the obligation, and Mortgage Electronic Registration Systems, Inc. ("MERS") is the nominee. Ac-cording to the Schedules, the Creditor held a lien valued at $87,195.84.

The Notice of First Meeting of Creditors issued on October 16, 2005. It detailed that there did not appear to be any assets, and that proofs of claim should not be filed. This Notice was sent to "Citi-Bank Mortgage Co.", at P.O. Box 8003, South Hackensack, New Jersey. 07606–8003 the address listed on Debtors* creditor matrix. As a result of the meeting of creditors held on December 6, 2005, the Trustee determined that the mortgage did not describe the Debtors' property, but rather a parcel previously conveyed by the Debtors to third parties, James and Debbie Kinnison ("Kinnisons") on February 21, 1989.

On March 1, 2006, Michael J. McCormick ("Mr.McCormick"), an attorney at the law firm of McCalla Raymer, LLC ("McCalla"), filed a Request for Service of Notices on behalf of the Creditor. On April 28, 2006, a Notice of Assets was issued, and a bar date for the filing of claims was established as August 1, 2006. Service was provided to "CitiBank Mortgage Co." at the South Hackensack, New Jersey address as well as to CitiMortgage, at the address provided by McCalla on behalf of the Creditor.

Approximately one month later, on May 23, 2006, Casey M. Cantrell ("Ms.Cantrell"), an attorney in the law firm of Lerner, Sampson & Rothfuss ("Lerner"), requested the abandonment of the property in writing. Ms. Cantrell represented that Lerner was counsel for MERS, as nominee for CitiMortgage, successor by merger to First Nationwide Mortgage Corp. In response, the Trustee sent a letter on May 31, 2006, stating the he had on a preliminary basis concluded that the property was mortgage-free, and that a sale back to the Debtors was being negotiated. According to the Trustee's affidavit, Ms. Cantrell

never responded. A notice of appearance was never filed by Lerner, and neither McCalla or Lerner ever filed a motion to compel abandonment. The only action that was taken at the time occurred approximately one month later, on June 27, 2006, when a secured proof of claim for $84,825.50 was filed on behalf of CitiMortgage. The claim was signed by Karrollanne K. Cayce, an attorney at McCalla.

Two months later, on August 28, 2006, the Trustee filed a Notice of Intent to Sell Property of the Estate Free of any Liens. Claims, and Encumbrances. It was served on Ms. Cantrell, Mr. McCormick, CitiBank Mortgage Co. at the South Hackensack, New Jersey address, and MERS, at G4313 Miller Road, Flint, Michigan, The Notice gave a detailed description of the property at issue, including the address. In the paragraph entitled "Disposition of Proceeds and Treatment of Liens," the Trustee stated: 1) he had determined that there were no liens or encumbrances against the property; 2) Creditor's interest only attached to the parcel previously conveyed to the Kinnisons; 3) the Kinnisons' parcel in the GVC Mortgage was not to be included in the sale; and, 4) the order authorizing the sale would provide a transfer, free of all liens, claims, and encumbrances, including the GVC Mortgage. Inexplicably, no response or objection to the Notice was filed on behalf of CitiMortgage by McCalla or Lerner.

Approximately two months later on October 13, 2006, an Order Authorizing Sale of Property Free of Liens, Claims and Encumbrances was entered. This Order was not served on the Creditor, McCalla or Lerner. Indeed, the only parties on the service list included the Trustee, the United States Trustee, the Debtors and their bankruptcy counsel. The only reasonable explanation for this limited service is that there were no objecting parties to serve.

Approximately two months later on December 1, 2006, the Trustee filed a Report of Sale, and it was served on MERS, Ms. Cantrell, and Mr. McCormick. Again, no action was taken by McCalla or Lerner on behalf of the Creditor.

According to the Trustee's affidavit, on January 9, 2007, he received a call from an attorney at McCalla, Sara K. Capps ("Ms. Capps"), On behalf of the Creditor she requested information regarding the sale of the real estate. The very next day, January 10, 2007, the Trustee responded by providing copies of the Debtors' deed, the Trustee's purchase contract negotiated with the Debtors, and information regarding the error made in the legal description. Apparently armed with this information, Ms. Capps corresponded with Ticor Title Insurance Company ("Ticor") on January 11, 2007, stating in relevant part:

**I have attached a copy of the real estate purchase contract between the Trustee and Mr. Pierce, As you can see, the property that was sold (by the Trustee) has a much different legal description than the property described in the original mortgage to GVC Mortgage, Inc. of October 31, 2001 ...** Apparently, the property described in the GVC Mortgage is a parcel of approximately 0.376 acres that the Borrower had conveyed to a Mr. And Mrs. Kinnison in 1989. GVC .... (docs) not have a Note securing repayment on this loan with Mr. and Mrs. Kinnison, and due to the fact that the residential property was sold free and clear of all liens (**there being none by virtue of the title defect**). (CitiMortgage) has suffered a complete loss in this instance, (emphasis supplied).

The same-day response of Ticor is noteworthy for its expression of frustration over the inaction of McCalla. In relevant part it was stated;

I was surprised to receive your letter of this date advising that the Trustee bad sold property of the debtor free and clear of liens. The Company was not aware of the Trustee doing so.... My review this date of the bankruptcy docket indicates that the Trustee filed its Notice of Intent to Sell Property of the Estate on August 28, 2006. The Certificate of Service attached to said Notice indicates that your firm was sent a copy of the Notice.... My file does not indicate that the Company (Ticor) was notified of or aware of any of these occurrences (entry of sale order and filing of sale report).... The Company has retained Ohio counsel to evaluate its policy obligations ... in light of the foregoing, as well as with the issues surrounding the legal description in the insured mortgage, (emphasis supplied).

Apparently as a result of this exchange, also on January 11, 2007, Stephanie Union ("Ms.Union"), an attorney in the Trustee's firm, was contacted by Amelia A. Bower ("Ms.Bower") on behalf of Ticor. She requested a balance for the sale proceeds held in this estate, that was quickly provided on January 12, 2007. Ten days passed, and on January 22, 2007, Ms. Bower again contacted Ms. Union. She requested that the Trustee delay the distribution of the sale proceeds until the title issues were settled. Approximately 15 minutes later, Ms. Bower was informed that the Trustee would not agree to any delay. Inexplicably, at this critical juncture, prior to distribution, no action was taken by Lerner and/or McCalla to compel abandonment or otherwise prevent the issuance of checks. According to the Trustee's affidavit there was more than ample opportunity to stop the payments, since the funds were not distributed until two months later on March 23, 2007.

The Trustee's Final Report and Account ("Final Report") was filed on January 23, 2007. Also on that date, the Notice and Opportunity for Hearing on Final Report and Account, Applications for Compensation, and Reimbursement of Expenses ("Final Notice") was docketed. The Final Notice was served on McCalla and CitiMortgage through the Bankruptcy Noticing Center on January 25, 2007. Indeed, the BNC certificate of service shows service upon the Creditor utilizing three different addresses in three states—Maryland, Missouri and New Jersey. Despite this near-deluge of notice and opportunity, no response was filed on behalf of the Creditor. In an effort to explain this lapse, the Creditor's affidavit simply states it has "no record" of receiving the Final Report from the Court, the Trustee, and most significantly one of its own law firms—McCalla.

Two months later and in the absence of any objection, the Order for Payment of Fees and Expenses was entered on March 23, 2007. It was not until March 30, 2007, that a pleading in opposition was finally filed on behalf of the Creditor; i.e., the instant Motion to Vacate filed by Lerner. This was the first pleading filed on behalf of the Creditor since the Request for Notice was filed by McCalla in March 2006, a whole year earlier. To make matters worse, this action was taken seven days after the sale proceeds were distributed, approximately two months after the filing of the Final Report, and more than three months after the filing of the Report of Sale.

█ Turning to the applicable legal standard, in deciding a motion for summary judgment, the Court must determine that a right to relief has been established, and that there exists no genuine issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322–324, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986); *Novak v. Metro-Health Medical Center*, 503 F.3d 572, 577 (6th Cir.2007), FRBP 7056. The underlying motion, the Creditor's Motion to Vacate Order of Payment of Fees and Expenses, is based upon Federal Rule of Civil Procedure 60(b). Specifically, the Creditor seeks reconsideration on the dual bases that the judgment is void as a matter of law (60(b)(4)), and that its failure to act in a timely manner is the result of excusable neglect (60(b)(1)).

■ The Court will first address the Creditor's argument that the Order for Payment of Fees and Expenses is void. Rule 60(b)(4) treats orders that are entered without jurisdiction or without due process as void. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir.1995). In the instant case, the Creditor argues that there is a failure of due process because the Trustee did not file an adversary proceeding to determine the validity and extent of its purported lien, prior to the sale and distribution. FRBP 7001(2).

The Creditor's theory is flawed for three reasons. First, the foundation of its argument is the mis-citation of one case (*Ruehle v. Educational Credit Management Corporation (In re Ruehle)*, 307 B.R. 28 (6th Cir. BAP 2004), *aff'd* 412 F.3d 679 (6th Cir.2005)). The Panel in *Ruehle* found that a student loan lender was denied due process where the debtor attempted to discharge a student loan through a chapter 13 plan provision. *In re Ruehle* at 34. The Creditor misuses this case because Federal Bankruptcy Rule 7001(6) specifically requires the commencement of an adversary proceeding to determine the dischargeability of debt. In cases, such as the one before the Court, where a trustee sales estate property that may be encumbered, the authorized procedure is to file a motion with reasonable notice and opportunity for hearing. FRBP 6004(c) and 9014(a).

■ Second, section § 363(f)(4) of the United States Bankruptcy Code ("Code") specifically enables trustees to sell property free of any liens when the obligations are in bona fide dispute. Courts have held that "a bona fide dispute" exists when, "... there is an objective basis for either a factual or legal dispute as to the validity *of the debt.*" *Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624, 627–28 (8th Cir. BAP 2004) (citations omitted). Nothing in section 363 requires a trustee to commence an adversary prior to sale, where there is an established bona fide dispute, and no such requirement can be found in Bankruptcy Rule 6004 that governs sales. *In re Downour*, 2007 WL 963258 *1 (Bankr.N.D.Ohio 2007); *In re Gaylord Grain L.L.C*, 306 B.R. at 628; *In re Collins*, 180 B.R. 447, 452 n. 8 (Bankr.E.D.Va.1995); *In re Oneida Lake Development, Inc.*, 114 B.R. 352, 358 (Bankr.N.D.N.Y.1990).

Third, to support its position the Creditor offers the affidavit of their Bankruptcy Specialist, James E. Bauer ("Mr.Bauer") where it is stated in relevant part:

15. During the bankruptcy, CitiMortgage, through counsel, has been communicating with the title insurance company that provided title insurance for the mortgage.

16. CitiMortgage has been waiting for the Trustee to file an adversary case to determine the validity of the recorded first mortgage. A copy of a letter from the title insurance company is attached hereto ... as Exhibit D.

Exhibit D referred to in the affidavit is a November 8, 2006, letter from John V. Laird, Senior Claims Counsel for Ticor addressed to Mr. Dylan W. Howard in the McCalla firm. It states:

At this time, as the potential adverse claimant has not initiated an adverse claim in any litigation, the insured lender is not suffering loss or damage which is covered by the policy, pursuant to its terms. In the event that an adverse claimant files a proceeding, or there is some other adverse title claim, please notify me immediately, and a coverage determination will be made based on the facts and allegations of such adverse title claim.

Considering the affidavit and correspondence together, they are not helpful to the Creditor's cause for three reasons. First, contrary to the assertion of a lack of due process, the affidavit demonstrates that the Creditor. Lerner and/or McCalla, and Ticor were aware prior to the sale that the Trustee had concluded that there was no valid lien, and that he intended to administer the property. Second, even with this knowledge the Creditor seeks to excuse its failure to act on the basis that that they were waiting for the Trustee to file an adversary. The affidavit suggests that this belief is premised upon the position taken by Ticor, that it was not going to process the Creditor's title insurance claim until some challenge to the lien was asserted. What the affidavit does not say, however, is whether the Creditor obtained any guidance from its two law firms in the case—Lerner and/or McCalla.

Third, the affidavit does not explain why a motion to compel abandonment was not pursued as a means to force the Trustee to file an adversary. Also, there is no detail regarding efforts made by the Creditor, Lerner and/or McCalla to monitor the case for the filing of an adversary proceeding prior to the sale and the distribution of the proceeds. Such gaps damage the Creditor's credibility when it argues that it was deprived of due process. The Creditor does its cause harm by essentially making

the Trustee, who serves as a fiduciary for the benefit of all creditors, responsible for preserving their particular interests. For all of these reasons the Court concludes that the Creditor can not establish that the Order for Payment of Fees and Expenses is void, and that the Trustee is entitled to summary judgment.

The Court now addresses the second basis offered to support the vacation of the Order for Payment of Fees and Expenses—"excusable neglect" under Rule 60(b)(1). To support vacation of the Order, the Creditor again provides the affidavit of Mr. Bauer in which he states in relevant part as follows:

17. CitiMortgage has no record of receipt of the Final Report, either from the Trustee or the Court, or from its agent, McCalla Raymer.

18. CitiMortgage has reviewed its records, and there (is) no evidence of receipt of the Final Report listed in its business records.

In deciding whether to vacate an order based upon alleged excusable neglect, four factors are considered: 1) the danger of prejudice to the opposing party; 2) the length of the delay and potential impact on the case; 3) the reason for the delay, including whether it was within the reasonable control of the moving party; and 4) whether the petitioner acted in good faith. *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Based upon the affidavits, pleadings and statements of counsel, the Court concludes that the Creditor has failed to establish excusable neglect. Three factors have been the most persuasive.

First, the supporting affidavit merely stales that the Creditor has "no record" of ever receiving the notice of the final report from the Trustee, the Court or McCalla,

The Final Notice, however, was served upon McCalla, and the Creditor was served at Missouri, New Jersey and Maryland addresses, according to the Court's records. Indeed, the Missouri address used on the Final Notice matches the address designated on the Creditor's Proof of Claim, except for the zip code. Here, the affidavit is silent as to whether any of the addresses used for the Creditor and McCalla are incorrect. In the affidavit there is no mention of Lerner that also represented the Creditor Most significantly, there is no affidavit from McCalla to demonstrate what it received, and to explain why no action was taken to stop the sale and/or delay distribution. Similarly, there is no affidavit from Lerner.

Second, assuming that notice of the Final Report was not received, the Creditor had more than ample information from other sources that the Trustee had determined the mortgage was defective, and that he planned to sale the property back to the Debtors. As detailed above, the Trustee was contacted as early as May 23, 2006, by Lerner to seek his signature on an abandonment, He promptly refused. This was the first and best opportunity the Creditor had to preserve its interests, yet a motion to compel abandonment was never filed or any other action taken to stop the administration of the properly.

This pattern was repeated as the Trustee continued his liquidation, unopposed; e.g., 1) the August 28, 2006. Notice of Intent to Sell Property of the Estate Free of any Liens, Claims, and Encumbrances that was served on Ms. Cantrell, Mr. McCormick, the Creditor and MERS; 2) the December 1, 2006, Report of Sale, that was served on MERS, Ms. Cantrell, and Mr. McCormick; 3) on January 10, 2007, the Trustee provided McCalla copies of the Debtors* deed, the Trustee's purchase contract with the Debtors, and information regarding the error made in the legal description; 4) on January 22, 2007, counsel for Ticor unsuccessfully requested a delay of the distribution of the sale proceeds until the title issues were settled, and two months later, in the absence of any further action by the Creditor and its two law firms, the funds were distributed on March 23, 2007. At that juncture the genie was out of the bottle.

Third, since the funds were disbursed more than one year ago, barring divine intervention, it would be impossible for the Trustee to recover the payments at this point, and such acquirement would delay the closing of this estate to the detriment of other creditors that took timely action to preserve their interests. The only other alternative is for the Trustee to pay the funds from his personal and/or law firm resources. This outcome would not only wrongfully punish the Trustee, but would morph all trustees into title insurers of last resort. For these reasons the Court concludes that the Creditor has failed to establish excusable neglect, and that the Trustee is entitled to summary judgment.

**IT IS SO ORDERED.**